# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. ____23-mj-8403-WM_____

**UNITED STATES OF AMERICA**

v.

**HUMBERTO JOSE FORTE,**

_____/
                  **Defendant.**

FILED BY____**SW**____D.C.

**Aug 10, 2023**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?     ___ Yes  ✔ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?     ___ Yes  ✔ No

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?     ___ Yes  X  No

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

BY: _____

DANIEL. E. FUNK
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.      0592501
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel:        (305) 905-7509
Fax:       (561) 820-8777
Email:     daniel.funk@usdoj.gov

AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

FILED BY_____ *SW* _____D.C.

**Aug 10, 2023**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. – WPB

|  |  |  |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.   23-mj-8403-WM |
| HUMBERTO JOSE FORTE | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of between January 13, 2023 and August 10, 2023 in the counties of ___Palm Beach and Miami-Dade___ in the ___Southern___ District of ___Florida___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846. | Conspiracy to distribute controlled substances. |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

Subscribed and sworn to by
FaceTime/Telephone pursuant
to Fed. R. Crim. P. 4.1 and 4(d)
this  10th  day of August 2023,
in West Palm Beach, Florida.

*Barry Kopplin*
*Complainant's signature*

DEA TFO BARRY KOPPLIN
*Printed name and title*

Date:  August 10, 2023

*William Matthewman*
*Judge's signature*

City and state:  ___West Palm Beach, FL___   WILLIAM MATTHEWMAN, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT

I, Barry Kopplin, having been duly sworn, do hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.    This affidavit is submitted in support of a criminal complaint charging Humberto Jose FORTE with conspiracy to distributed controlled substances, in violation of in violation of 21 U.S.C. §§ 841(a)(1) and 846.

2.    I am a deputized Task Force Officer with the United States Drug Enforcement Administration, (hereinafter referred to as "DEA").  As such, I am a law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7), who is empowered to conduct criminal investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

3.    I am a police officer employed by the Delray Beach Police Services Department and have served in that capacity since 2011.  I am currently assigned as an Agent in the Vice, Intelligence and Narcotics Section, and since March 2021, have been assigned to a DEA Task Force Group as a Task Force Officer ("TFO").  In my capacity as a TFO with the DEA, I have conducted investigations of, and have been instructed in, investigative techniques concerning the unlawful distribution of illegal narcotics, possession with intent to distribute controlled substances, importation of illegal narcotics, use of communication facilities to conduct illegal narcotics transactions, maintaining places for purposes of manufacturing, distributing or using controlled substances and conspiracies to commit these offenses, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 856, 846, 952, and 963, respectively.  Based upon this experience, and through the experience of other senior agents and agents with numerous years of

1

experience, I have become versed in the methodology utilized in illegal narcotics trafficking, the common types of language used by illegal narcotics traffickers, and unique patterns employed by narcotics organizations.

4.     During the last year, I have participated in the investigations of multiple on-line drug distribution organizations. The investigations have involved subjects engaged in the sale of narcotics through dark web and open web sites. From training, experience, and interactions with other investigators, I have become familiar with narcotic traffickers' methods of operation including the distribution, storage, and transportation of narcotics, collection of proceeds and money laundering. The investigations have resulted in arrests of individuals who have smuggled, received, and distributed controlled substances, including, but not limited to, methamphetamine, fentanyl, and other pharmaceuticals. These investigations have also resulted in seizures of illegal drugs and proceeds from the drug distribution. In my experience as a Task Force Officer, I have executed multiple search warrants for online drug distribution investigations and reviewed related electronic communications and records which revealed on-line drug distribution and money laundering. My training and experience as a Task Force Officer, along with conversations with other federal, state, and local investigators familiar with narcotics trafficking and money laundering matters, form the basis of the opinions and conclusions set forth below, which I drew from the facts set forth herein.

5.     Since this affidavit is being submitted for the limited purpose of securing a complaint, I have not included every fact known to me concerning this investigation. I have included only those facts and circumstances I believe are sufficient to establish probable cause for the issuance of a complaint.  The statements contained in this affidavit are based upon my investigation, information provided by other sworn law enforcement officers and other personnel

specially trained in the seizure and analysis of computers and electronic mobile devices and electronic storage devices, and on my experience and training as a federal task force officer.

## INVESTIGATION INTRODUCTION

6.      A transnational drug trafficking organization (DTO), led by individuals residing outside the United States, is responsible for orchestrating the distribution of counterfeit pharmaceutical pills throughout the United States. Customers purchase drugs from several publicly accessible websites that advertise pharmaceutical pills for sale without requiring prescriptions. The DTO directs members located within the United States to mail counterfeit pharmaceutical pills to customers. The DTO entices drug customers to become shippers/money launderers by offering them discounted prices for pharmaceutical pills and/or payment per package for mailing parcels to customers or other drug shippers. This manner of compensation has enabled the DTO to easily recruit new members. The DTO regularly uses cash applications like Venmo[1] or Zelle[2] to launder proceeds. After a customer makes a drug purchase from the website, the DTO has the customer send their payment to a cash app belonging to a shipper/money launderer located in the United States, rather than directly to an account belonging to the DTO. This allows the DTO leaders outside the United States to evade detection while putting only the shippers/money launderers at risk of being caught by law enforcement. The drug proceeds are moved from the cash application accounts to the bank accounts of shippers/money launderers, and subsequently forwarded to international business accounts

---

[1] Venmo is a mobile payment service that allows users to send and receive money electronically. It provides a convenient way for individuals to transfer funds between other individuals by linking their bank accounts, credit cards, or debit cards to the Venmo app.

[2] Zelle is a popular peer-to-peer payment platform that enables individuals to send and receive money directly from their bank accounts. It allows drug clientele from the website to make quick and convenient transactions to purchase illegal narcotics by using their email address or mobile phone number. In short, peer-to-peer with Zelle refers to the direct transfer of funds between individuals using the Zelle platform as the intermediary.

and/or non-U.S. based cryptocurrency accounts, before being forwarded to the leaders of the DTO.

7.      In November 2022, agents with the Drug Enforcement Administration (DEA), United States Postal Inspection Service (USIPS), Federal Bureau of Investigations (FBI), and Homeland Security Investigations (HSI) identified a shipper for the DTO. During the investigation, it was discovered that the shipper was involved in the distribution of counterfeit pharmaceutical pills, including popular brands such as Adderall, Xanax, and Oxycodone. These pills were being shipped in large quantities from the shipper's residential address in Gainesville, Florida, to clients located throughout the United States.

8.      In December of 2022, agents executed a federal search warrant at the shippers' Gainesville residence, where they discovered kilogram quantities of counterfeit pharmaceuticals. Agents also intercepted and searched over 100 packages sent by the shipper. During the search of the residence and the parcels, agents found substantial amounts of counterfeit pills (appearing to be pharmaceuticals) which were later confirmed to contain fentanyl and methamphetamine. A significant percentage of the pills contained acetaminophen, which is not a controlled substance. The Gainesville shipper was arrested and indicted for conspiring to distribute a controlled substance.

9.      One of the Gainesville parcels, containing counterfeit Adderall, was addressed to a licensed doctor in York, Pennsylvania. When approached by law enforcement regarding the parcel, the doctor cooperated and admitted to purchasing small quantities of Adderall from an online website known as canadiandrugstore.org. This website was later identified as one of several websites created by the DTO to unlawfully sell narcotics.

4

10.     Prior to arresting the Gainesville shipper, a Task Force Officer (TFO) from the United States Postal Inspection Service (USPIS) searched USPIS databases for evidence of suspected drug parcels being sent to the Gainesville shipper. The DTO was known to have shippers supply other shippers with narcotics. The TFO discovered a shipping label, addressed to the Gainesville shipper, that had been created (not yet printed or mailed) with a return name and address, "Ramses Izquierdo, 18520 NW 67th Avenue, Hialeah, Florida 33015."

11.     In January 2023, a USPIS TFO reviewed USPIS databases and discovered an unusually high volume of packages sent from South Florida using the return name and address "Ramses Izquierdo, 18520 NW 67th Avenue, Hialeah, Florida 33015" (hereinafter *The Return Address*).[3] The parcels were being shipped across the United States. Upon examining the packaging, labeling, weight, and quantity of the packages, the TFO suspected that they contained illegal narcotics based on his prior training and experience.

12.     In January 2023, the USPIS TFO obtained photographs from a self-service kiosk (SSK) located within a USPS Office.[4] The photographs showed the individual associated with parcels being mailed using *The Return Address* (Ramses Izquierdo, 18520 NW 67th Avenue, Hialeah, Florida 33015). After examining a SSK photograph, an agent conducted a search of several law enforcement databases and successfully identified Humberto FORTE as the individual associated with *The Return Address*.

---

[3] During further investigation, agents determined that Humberto FORTE routinely used the same name and return address "Ramses Izquierdo, 18520 NW 67th Avenue, Hialeah, Florida 33015."

[4] A SSK at the post office is a touch-screen terminal that allows customers to perform various postal services without having to interact with a postal clerk. The kiosks are typically available in post office lobbies and offer a range of services, such as buying stamps, weighing, mailing packages, printing shipping labels, and purchasing money orders. To use a SSK, customers simply follow the on-screen instructions and enter the required information, such as the recipient's address and the weight of the package. Payment can be made using a credit or debit card, or by scanning a pre-printed barcode. Once the transaction is complete, the kiosk will print out a postage label that can be affixed to the package. SSK's are designed to make postal services more convenient and accessible for customers, especially during peak times when there may be long lines at the post office counter.

**Conspiracy Connection to Boynton Beach – Palm Beach County**

13.     On January 13, 2023, a USPIS TFO searched USPS databases for parcels baring *The Return Address* and discovered a package addressed to a woman living in Boynton Beach, Florida. Later that day, law enforcement officers seized the package for evidentiary purposes.

14.     On January 24, 2023, law enforcement officers contacted the woman living in Boynton Beach. She gave consent to open and search her package. A subsequent search of the package revealed that it contained pills purporting to be Tramadol (11 grams), which is an opioid medication to treat severe pain (Schedule IV) for which a doctor's prescription is required. The Boynton woman admitted that she did not provide a prescription when ordering the pills contained in the package. Further, she identified "canadiandrugstore.org" as the website from which she purchased the seized Tramadol pills. Law enforcement officers looked at "canadiandrugstore.org" and observed that it advertised the following controlled substances for sale: Adderall, Tramadol, Phentermine, Ativan, Ambien, Valium, Xanax, Modafinil, and Klonopin.

15.     The Boynton woman further admitted that on multiple occasions she ordered an assortment of controlled substances from "canadiandrugstore.org" without a prescription, and that after ordering the controlled substances, she would commonly receive an order confirmation email. The Boynton woman advised that the confirmation emails contained the following information: quantity and type of controlled substance ordered, payment amount, customer related information, and expected delivery time.

**Surveillance of FORTE on January 31, 2023**

6

16.     On January 31, 2023, agents with the Drug Enforcement Administration (DEA) West Palm Beach District Office (WPBDO), United States Postal Inspection Service (USPIS), Federal Bureau of Investigation (FBI), Homeland Security Investigation (HSI), and the Palm Beach County Sheriff's Office (PBSO) conducted a surveillance operation at a United States Postal Service office located at 6193 NW 183rd Street, Hialeah, Florida 33015. The surveillance operation was initiated after a TFO with USPIS provided information that parcels using the *The Return Address* were being sent from the general area Miami-Dade, Florida.

17.     Agents began surveillance around noon. At approximately 6:43 p.m., an agent observed FORTE arriving at the post office on a blue Sanyang motorcycle with Florida license plate MPSF57. The motorcycle was registered to FORTE and used the address 510 76th Street Apartment 4, Miami Beach, Florida 33141, according to records obtained from the Florida Department of Highway Safety and Motor Vehicles. FORTE was carrying a large black backpack that appeared to be full of unknown items. After entering the post office, FORTE proceeded directly to a self-service kiosk (SSK). Shortly thereafter, FORTE left the Post Office driving his blue motorcycle.

18.     After leaving the post office, FORTE's driving became erratic as he weaved in and out of traffic lanes, making it difficult for agents to continue their surveillance. Following FORTE's departure, a TFO with USPIS attempted to retrieve any packages that FORTE may have left in the SSK. However, it was later discovered that FORTE had only used the SSK to print approximately seventeen shipping labels using his cell phone and had not shipped any packages at the SSK. Agents recovered an image of FORTE in front of the SSK.

19.     At approximately 8:45 p.m., an agent observed FORTE operating the same blue motorcycle at the intersection of NW 57 Avenue and NW 183 Street. FORTE was then tracked

to a Public Storage facility located at 18400 NW 57th Avenue, Miami Gardens, FL 33015. Agents observed FORTE parked inside the facility, which required an access code and/or key card for entry. FORTE then entered the facility through the front door carrying his black backpack.

20.     Over an extended period, agents carefully observed FORTE as he entered and exited the facility multiple times. During one of these instances, FORTE seemed to engage with a woman. Shortly after their interaction, FORTE and the woman departed from the facility together riding on his motorcycle.

21.     Agents kept FORTE under surveillance as he traveled from the Public Storage facility to the Post Office located at 6193 NW 183rd Street, Hialeah, Florida 33015, arriving at approximately 9:54 p.m. FORTE entered the Post Office while wearing the same outfit and carrying the same backpack as previously observed. Meanwhile, the woman remained outside the facility, keeping a watchful eye in all directions, so agents were unable to monitor FORTE's movements inside the Post Office. After a brief period, FORTE exited the Post Office and returned to his blue motorcycle. I took note that FORTE's black backpack was less full than before he entered the Post Office. FORTE then departed the area with the woman driving his blue motorcycle.

22.     Agents maintained their surveillance of FORTE and followed him to the intersection of Collins Avenue and 76th Street in Miami Beach, Florida. At that location, FORTE disregarded multiple traffic signals, causing the agents to lose sight of him. As a result, the agents were unable to continue the surveillance operation and discontinued their pursuit.

23.     On the same date, agents were able to locate a package FORTE had delivered to the Post Office. The package was a USPS Priority mail package, bearing USPS Tracking

8

Number 9400 1379 0327 5503 5463 73 and was addressed to a person in Laguna Woods, California. The return address on the parcel was *The Return Address* "Rames Izquierdo, 18520 NW 67 Ave., Hialeah, FL, 33015-3302."

24.     On February 6, 2023, Honorable Magistrate Judge Bruce Reinhart authorized a warrant to search the package sent by FORTE (23-mj-8051-BER). A TFO with USPIS opened the package and discovered fifty-four (54) blister packets labeled "Aspadol tab 100 mg," which is a brand label for Tapentadol, a Schedule II controlled substance. Based on the shape, size, and color of the pills contained within the blister packs, they appeared to be Tapentadol based on a review of the website drugs.com. Later lab testing showed that the pills contained Bromazolam, a non-controlled substance and did not contain Tapentadol. The total weight of the Bromazolam was measured to be 79 grams.

### Surveillance of FORTE on February 1, 2023

25.     On February 1, 2023, at around 11:00 a.m., agents began surveillance in the vicinity of the Public Storage facility located at 18400 NW 57 Ave, Miami Gardens, FL 33015. At approximately 3:00 p.m., agents spotted FORTE riding his blue motorcycle. FORTE was carrying a black backpack that appeared to be the same one observed the day before (1-31-23). FORTE proceeded to enter the secure parking area of the storage facility before making his way inside.

26.     Around 4:13 p.m., agents spotted FORTE walking within the secure parking lot of the storage facility. I then dialed a phone number ending 7364, which FORTE had provided to an officer during a prior unrelated traffic stop. As I made the call, FORTE was observed answering the phone. A male answered. The conversation was brief. I inquired about a random person and FORTE denied being that person. Subsequently, the telephone call abruptly disconnected.

27.     Agents observed FORTE leaving the storage facility at around 4:52 p.m. He drove his blue motorcycle to the Post Office at 6193 NW 183rd Street, Hialeah, Florida 33015, and parked. Agents followed FORTE into the Post Office where the agent recorded video of FORTE scanning his cell phone at the SSK. This took place at approximately 4:53 p.m. Five minutes later, FORTE exited the Post Office and drove out of the parking lot. Agents continued to conduct surveillance of FORTE.

28.     At around 5:06 p.m., agents followed FORTE from the Post Office to a residence located in Hialeah, Florida. Agents observed FORTE entering the residence with his backpack partially open. Prior to FORTE entering the residence, an agent saw that the contents of FORTE's black backpack appeared to be shipping envelopes.

29.     At approximately 5:40 p.m., agents saw FORTE leaving the residence carrying a black backpack and a black garbage bag. The garbage bag was later found to contain eighteen USPS packages. FORTE drove directly to the Post Office at 6193 NW 183rd Street, Hialeah, Florida 33015, while carrying both bags. Inside the Post Office, an agent observed FORTE with the black backpack and garbage bag. At approximately 5:43 p.m., FORTE left the Post Office without the garbage bag. He then drove directly to a Public Storage facility. After FORTE left the area, agents retrieved the eighteen USPS packages that were mailed by FORTE. All the parcels used *The Return Address*. The agent also found a black garbage bag in a nearby trash can next to the SSK.

30.     At around 7:02 p.m., agents saw FORTE leave the Public Storage facility and drive directly to the residence. I drove by the residence and saw FORTE standing next to his blue motorcycle. Shortly thereafter, the agents discontinued their surveillance.

31.    On February 6, 2023, Honorable Magistrate Bruce Reinhart signed a warrant authorizing a search of the package sent by FORTE (23-mj-8052-BER). Pursuant to the search warrant, a TFO with USPIS opened the package and discovered round orange pills within eighteen (18) blister packets labeled "aspadol tab 100mg" (Aspadol is the brand name for a prescription drug containing Tapentadol).   Based on the shape, size, and color of the pills contained within the blister packs, they were identified on drugs.com as Tapentadol. Later lab testing showed that the pills contained Bromazolam, a non-controlled substance and did not contain Tapentadol. The total weight of the Bromazolam was measured to be 51 grams.

**Identification of FORTE's Public Storage Unit**

32.    On February 1, 2023, an agent served a Grand Jury subpoena on the criminal compliance department of Public Storage. Subsequently, I conducted a review of the subpoena results and discovered that storage unit "4204" was registered under FORTE's name. Additionally, FORTE's leasing agreement contained the address of the residence he was seen at during surveillance, his phone number and an e-mail known to be used by him.

33.    On February 28, 2023, I served an administrative subpoena to the Manager of the Public Storage facility located at 18900 NW 57th Avenue, Hialeah, Florida. During a search for surveillance footage, the manager discovered that storage Unit 4204 belonged to FORTE, who had several months of overdue payments. The manager informed me that FORTE had been notified of the overdue payments and was informed that his locker was going to be emptied if he did not make payments.

34.    Without any request on my part, the manager went to the storage locker to clear it out. The manager discovered numerous black garbage bags containing empty Aspadol 100 MG

boxes. Upon locating the empty boxes, the manager promptly notified me of the discovery and requested my assistance due to the presence of drug paraphernalia.

35.    While conducting the search, I discovered several documents that belonged to FORTE. Upon examining the documents, I found a Customs and Border Protection (CBP) document addressing the seizure of 1.44 kilograms of Alprazolam, which is a IV controlled substance, intended for delivery to FORTE (Case 2023470100201001).  I also found a piece of cardboard with the words "Aspadol = 59,040, Icidol = 7,330, Alko = 6,740" written in pen on one side, which appeared to be a count of pills. I recognized Aspadol as the same type of pill mailed by FORTE on January 31, 2023, and February 1, 2023. Based on my training, knowledge, and experience, drug traffickers write down a pill count to keep track of their inventory and sales. By recording the number of pills acquired and sold, they can more easily determine their profits and losses, and ensure that they have not lost any pills in transit or during a transaction. A pill count can also be used to verify the accuracy of a shipment or order.

36.    In the unit, I also discovered a USPS package using *The Return Address*, "Ramses Izquierdo, 18520 NW 67th Avenue, Hialeah, Florida 33015-3302," which was the same address used on several intercepted packages that contained counterfeit pills sent by FORTE. Additionally, I found several empty packages that were sent to FORTE from various locations which were addressed to hotels in South Florida.

### Undercover Purchase from Canadiandrugstore.org

37.    On January 30, 2023, I conducted an undercover purchase of thirty Adderall pills from canadiandrugstore.org. After placing the order for Adderall, the website requested the following customer related information: name, telephone number, address, and email address. Immediately after completing the process, I received a telephone call from a number ending

1371, which was later found to be a voice over internet protocol (VOIP) telephone. During the call, I talked to an unidentified male, and we discussed the amount, price, and payment method for the ordered Adderall. The unidentified male directed me to send $335 dollars to a Zelle account. I sent payment to the Zelle account and subsequently received an email which contained order confirmation details.

38.     On or about February 6, 2023, a USPIS TFO received a USPS parcel at an undercover address, which contained the pills I ordered on January 30, 2023, from the canadiandrugstore.org website. The circular orange pills appeared to be Adderall. The USPIS TFO field tested the Adderall pills, and they tested positive for methamphetamine. The mailer was later identified as a person living in Georgia.

39.     On February 13, 2023, I received an email from the same e-mail that had confirmed my order. It advertised the sale of additional narcotics. I responded by e-mail and agreed to conduct future narcotics transactions. Future threads of communication included three separate e-mail addresses with a similar naming pattern.

40.     On February 23, 2023, I obtained a search warrant (23-mj-8091-RMM) from the Honorable Magistrate Judge Ryon M. McCabe to review account data for the three email accounts associated with the operation of canadiandrugstore.org.

41.     On or about March 16, 2023, I initiated a review of the email content obtained pursuant to the warrant. During the review, I identified hundreds of emails that related to the sale of pharmaceutical substances. Furthermore, most of these emails seemed to indicate that the illegal narcotics transactions were linked to the website canadiandrugstore.org.

42.     I discovered several emails instructing clients to make payments for their ordered substances through Zelle, Venmo, and PayPal. Based on this investigation, I believe that each of

the identified accounts belongs to an individual or individuals involved in the distribution of pharmaceutical substances and/or the laundering of illicit drug proceeds on behalf of the individuals operating canadiandrugstore.org.

43.     As further evidence that the accounts are linked to individuals shipping narcotics for the canadiandrugstore.org, I came across an email thread that included a complaint from a customer who had ordered a substance and requested the use of a specific shipper named "forte Humberto" to deliver a replacement substance. Upon additional review, I discovered evidence of pharmaceutical payments being made to FORTE's Venmo account. One of the photographs located in the data showed a deposit of $750, labeled "GIFT" being made by the person requesting that "forte Humberto" be the shipper for her purchase.

44.     I also located emails found within email data showing another customer purchasing pharmaceutical pills. An "associate" at canadiandrugstore.org directed the customer to deposit $390 into FORTE's Venmo account labeling it "Gift" in exchange for thirty (30) Ambien 10 MG pills.

45.     A continued reviewed of the email threads revealed that clients purchasing drugs were instructed to label each payment as a "gift." Based on my training, knowledge, and experience, I am aware that labeling transactions as a "gift" is a common tactic used by drug traffickers to conceal the true nature of the transaction.

### Identification of FORTE's Venmo Account

46.     On May 10, 2023, after discovering the emails identifying FORTE's Venmo account used by the DTO to launder illicit drug proceeds, a Task Force Officer from the DEA submitted a grand jury subpoena to PayPal Inc., which is responsible for the legal compliance

regarding Venmo account holders. The purpose of the subpoena was to request all account information related to FORTE's Venmo account.

47.     On June 13, 2023, the DEA Task Force Officer received a response from PayPal Inc., which provided details about FORTE's Venmo account. On August 19, 2021, FORTE activated his Venmo account with the username of Humberto Forte which is the same cash application account receiving illicit drug proceeds for canadiandrugstore.org. The account was created and activated with FORTE's personal information to include: his name, date of birth, social security number, and email address. It is worth noting that the email address was also used by FORTE to rent a storage unit at the Public Storage facility where drug paraphernalia was in the unit he had rented. Additionally, FORTE listed the phone number ending 7364 as his personal cell phone number which he was seen using during law enforcement surveillance on February 1, 2023.

48.     Upon conducting a thorough review of FORTE's Venmo account, I determined that from January 2022 to May 2023, approximately $201,044 was deposited into the account, while an amount exceeding $122,313 was subsequently distributed to other accounts. Notably, it was discovered in January 2023 that FORTE's wage and earnings history indicated unemployment since 2014.

49.     Upon further review of FORTE's Venmo account, it was discovered that approximately 260 deposits were marked as "gift," a term that coincides with the description provided to drug clients on canadiandrugstore.org. Moreover, there were additional deposits labeled as "medication," "Xanax," and "health services," which were also indicative of receiving illicit drug proceeds on behalf of canadiandrugstore.org, and/or several websites controlled by the DTO.

15

### FORTE's ExtraSpace Storage Unit

50.     On April 19, 2023, the legal department for the ExtraSpace Storage facility located at 5903 NW 183rd Street, Miami Gardens, Florida, 33015, was served a grand jury subpoena by agents. The agents suspected this facility to be a potential location for FORTE to store illegal narcotics after FORTE's Public Storage account was closed.

51.     At around 3:30 p.m. on the same day, agents set up surveillance at the ExtraSpace Storage facility, in anticipation of FORTE's arrival. At approximately 7:02 p.m., FORTE was observed entering the facility through a fence entrance located on the southeast side. Agents continued to maintain surveillance until approximately 9:35 p.m., during which time FORTE was not seen leaving the facility. At this point, agents terminated their surveillance.

52.     On April 26, 2023, agents received the Grand Jury Subpoena return from ExtraSpace Storage, which revealed that FORTE had rented unit #3042 at the facility located at 5903 NW 183rd Street, Miami Gardens, Florida, 33015. The subpoena return indicated that FORTE had violated his contract by being at the unit outside of the facility's hours of operation, and he was therefore scheduled to be removed from the unit. It was revealed that FORTE was required to vacate the storage unit by May 1, 2023.

53.     On May 1, 2023, at approximately 9:30 a.m., agents arrived at the ExtraSpace Storage facility, where FORTE had been renting unit #3042. Upon arrival, agents were informed by a representative of ExtraSpace Storage that FORTE was being evicted from the unit due to a violation of his contract regarding operating hours. FORTE had been staying in the unit outside of the facility's hours of operation. The employee on duty informed agents that FORTE had already moved his property out of the unit and left it open and visible from the walkway.

16

54.     Upon inspection of the unit, agents observed that only one bookshelf was left in plain view from the hallway and no other items were visible. Agents were informed that FORTE had moved all his belongings out of the unit but had also left behind some trash. Agents were told FORTE moved all his items from the unit but also discarded trash in the trash can. This was known and confirmed from the video at the ExtraSpace Storage. Agents conducted a search of items discarded at a dumpster on the property and recovered the following items:

> Twenty-nine (29) Tramadol pills in blister packs
> 3 unknown white pills in a blister pack
> Two mailer envelopes addressed to Humberto Forte
> Numerous small plastic baggies
> Numerous scraps of paper with notations of letters and numbers

**Surveillance on August 3, 2023**

55.     On August 3, 2023, at approximately 11:20 a.m., agents from the Drug Enforcement Administration (DEA) and Homeland Security of Investigations (HSI) initiated surveillance of FORTE at his residence in Hialeah, Florida. During the surveillance operation, your affiant noticed FORTE's blue motorcycle parked at the residence. The motorcycle had been observed by agents during prior surveillance, particularly when FORTE was seen mailing packages containing counterfeit pharmaceutical pills at the Post Office located at 6193 NW 183rd St, Hialeah, FL 33015.

56.     At approximately 1:30 p.m., agents observed FORTE exiting the residence and proceeding to inspect a different motorcycle parked in front of the house. This motorcycle, which was orange in color, bore the same license plate registered to the blue scooter previously associated with FORTE. Shortly after examining the scooter, FORTE returned inside the residence.

17

57.     Around 3:43 p.m., agents observed FORTE leaving the residence with a blue backpack that seemed to be filled with unidentified items at the time. FORTE then drove from the residence to a Value Store It Self Storage (Value Storage) facility situated at 15320 NW 77th Ct, Miami Lakes, FL 33016. Upon arrival, FORTE entered the Value Storage facility, which was exclusively accessible to individuals with contracted storage units. Consequently, the agents maintained their surveillance position outside the storage facility.

58.     Around 4:46 p.m., agents observed FORTE leaving the Value Storage facility while still carrying the blue backpack and holding a white plastic bag. Upon closer observation, agents noticed that the white plastic bag contained square-shaped items. FORTE then drove away from the storage facility, and the agents continued to maintain their surveillance.

59.     While positioned at the intersection of NW 154th Street and the Palmetto Express Way, agents were near FORTE, who was waiting for the traffic control device to grant permission to enter the intersection. In that moment, your affiant had a clear and unobstructed view of the white plastic bag carried by FORTE. The bag was somewhat transparent, allowing your affiant to discern items neatly arranged within it. Upon closer inspection, your affiant observed several packages contained within the white plastic bag, each adorned with pre-made labels affixed to them.

60.     Shortly thereafter, FORTE drove directly to a United States Post Office situated at 1500 West 84th Street, Hialeah, Florida 33018. With the white plastic bag in his right hand, FORTE entered the Post Office premises. Once inside, FORTE proceeded to remove a total of eighteen black packages from the white plastic bag and deposited them into the Post Office's designated drop box. Subsequently, FORTE disposed of the white plastic bag in the trash bin

conveniently positioned adjacent to the drop box. FORTE then departed the vicinity, riding his motorcycle, prompting the agents to cease their surveillance.

61.     On the same date, agents successfully located a total of eighteen black packages that had been shipped by FORTE within the post office drop box. Your affiant diligently examined each parcel, noting that they all bore *The Return Address* "Ramses Izquierdo, 18520 NW 67 Ave, Hialeah, Florida 33015-3302," the same return information associated with intercepted parcels that had previously been linked to FORTE's counterfeit pharmaceutical pill shipments.

62.     On the same date, your affiant submitted an administrative subpoena to the manager of the Value storage facility, requesting all account information pertaining to FORTE's storage unit rental agreement. The account information showed that FORTE had a storage unit (Unit #2015) at the Value Storage facility.

63.     On the same date, I requested the use of a certified Narcotics Detection Canine (K-9) to conduct a thorough exterior sniff of storage lockers, including the one associated with FORTE. It should be noted, the K-9 handler was unaware of which specific storage unit belonged to FORTE and was given approximately 10 units all symmetrical in shape and size for the K-9 to sniff. As the K-9 team finished the sniff, the handler advised your affiant that his K9 gave a positive alert (sit, stay and focus) on the bottom seam of unit 2015.

64.     Furthermore, the K-9 handler and his assigned K-9 were also asked to perform a sniff of the parcels that had been seized earlier by law enforcement at the Post Office. Each parcel was individually concealed within a box and then mixed within four blank bags and boxes of similar shape and size. The K-9 handler advised your affiant he received 18 positive alerts,

that amounted to the exact number of parcels that had been seized by law enforcement.  Agents are in the process of obtaining a search warrant for the parcels.

65.    On August 8, 2023, agents obtained a search warrant from the Honorable Magistrate Judge William Matthewman (23-mj-8392) to search the 18 parcels seized on August 3, 2023. Upon opening the parcels, agents discovered that the parcels contained blister packs of pharmaceutical pills. There were two types of pills. One type was labeled as being Tapentadol, which is a Schedule II controlled substance. The pills contained in the blister packs were consistent with the size, shape, and color of a type of Tapentadol, according to a review of (drugs.com). There were 1,710 Tapentadol pills with a weight of 492 grams (including packaging). The other type of pill located in the parcels was labeled as being Lorazepam, which is a Schedule IV substance. The pills contained in the blister packs were consistent with the size, shape, and color of a type of Lorazepam, according to a review of (drugs.com). There were 620 Lorazepam pills with a weight of 120.6 grams (including packaging).  The Tapentadol and Lorazepam pills appeared to be genuine pharmaceuticals, which required a valid prescription for purchase in the United States. Each of the parcels were being mailed somewhere in the United States.


<<<<<<THIS SPACE WAS INTENTIONALLY LEFT BLANK>>>>>>

## CONCLUSION

66.      Based on the foregoing, your affiant submits that there is probable cause to believe Humberto Jose Forte has committed the criminal offense of conspiracy to distributed controlled substances, in violation of in violation of 21 U.S.C. §§ 841(a)(1) and 846.


FURTHER YOUR AFFIANT SAYETH NAUGHT.

Respectfully submitted,


*Barry Kopplin*

TFO Barry Kopplin
Drug Enforcement Administration


Subscribed and sworn to by
FaceTime/Telephone pursuant
to Fed. R. Crim. P. 4.1 and 4(d)
this  10th  day of August 2023,
in West Palm Beach, Florida.

*William Matthewman*

WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE


21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**:      HUMBERTO JOSE FORTE

**Case No**:      23-mj-8403-WM

**Count 1:**

Conspiracy to Distribute Controlled Substances

21 U.S.C. §§ 841(a)(1) and 846

**\* Max. Term of Imprisonment:** Life
**\* Mandatory Min. Term of Imprisonment:** None
**\* Max. Supervised Release:** a minimum of 5 years up to life
**\* Max. Fine:** $10,000,000

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.**